For the reasons assigned the appeal is dismissed.

81 So.2d 371

Mrs. Nancy Lankenau EATON

v.

Harry A. EATON, Jr.

No. 41306.

April 25, 1955.

Rehearing Denied May 23, 1955.

Richard A. Dowling, New Orleans, for defendant-appellant.

Kullman & Lang, Richard C. Keenan, New Orleans, Barranger & Ellis, Covington, of counsel, for plaintiff-appellee.

HAMITER, Justice.

Alleging that her husband, Harry A. Eaton, Jr., and a certain named paramour have resided in open concubinage since the end of 1948 or the early part of 1949 and are presently so living together in St. Tammany Parish, Mrs. Nancy Lankenau Eaton instituted this action in the district court of such parish seeking a divorce. Additionally, plaintiff demanded that she be awarded the care and custody of the minor child born of the marriage; that the defendant be condemned to pay her alimony in an amount to be fixed by the court for the support of herself and the child; that he be ordered to pay a reasonable sum as attorney's fees in connection with this proceeding; that an inventory be taken of the property belonging to the community of acquêts and gains; and that a partition of said property be decreed.

Defendant, in his answer, denied plaintiff's allegations respecting his living in open concubinage. Affirmatively, he pleaded in bar of the action a decree of divorce rendered in his favor by the Chancery Court of Sharp County, Arkansas. Further, he specially averred that plaintiff is estopped from prosecuting this suit, she having acquiesced in the divorce proceedings in the State of Arkansas by accepting benefits under the judgment therein rendered.

The district judge, after trial of the merits, refused to give full faith and credit to the Arkansas divorce decree and, accordingly, granted a divorce in favor of

plaintiff. Further, he decreed that she have custody of the minor child born of the marriage and that defendant pay to her alimony of $150 per month and attorney's fees in the sum of $500. Plaintiff's demand for a partition of community property was denied, the judge having concluded that she was estopped from claiming any community rights by reason of her previous acceptance of a community settlement.

The defendant husband appealed from the judgment. Plaintiff neither appealed nor filed answer to defendant's appeal. In fact, to quote from the brief of her counsel, she "submits that the judgment below, including the alimony award, should be left undisturbed."

Appellant, in this court, urges that (1) the Arkansas decree is entitled to full faith and credit and (2) plaintiff is estopped from questioning such decree, she having received benefits under it, including alimony and a community property settlement.

As is disclosed by the record plaintiff and the defendant were married on September 27, 1935, in Newton, Massachusetts. Of the marriage one child was born, namely John Alex Eaton. In 1939 they moved to Louisiana, establishing a domicile in the Metairie section of Jefferson Parish. There they lived together until November 7, 1948, when Mrs. Eaton went to visit the defendant's sister in Chula Vista, California, the husband purchasing for her trip a one-way ticket. After she had been

there about ten days or two weeks she received from Eaton for her signature a paper which she described as "a waiver to appear in court, there was no letter, simply a note clipped to the top saying sign this and have it notarized." Thereupon, by mail, she contacted her husband to find out about the paper, and she learned that he wanted to get a divorce.

Ultimately, Mrs. Eaton consulted an attorney in California, and after certain negotiations were conducted by correspondence between him and Eaton's Louisiana attorney she signed the waiver. This instrument, entitled "Waiver of Summons and Entry of Appearance" and mailed by her California attorney to Eaton's Arkansas attorney on April 9, 1949, reads in part as follows:

"1. I hereby waive service of summons for the time allowed by law and enter my General Appearance for all purposes, as defendant in the above styled cause.

"2. I hereby waive notice of the taking of depositions for the plaintiff, which includes time, place, all formalities in the taking, transcribing, transmitting and filing of the same, which includes depositions taken by interrogatories, and signatures, but not officer's certificate.

"3. I also further agree that this cause may be submitted to the Court in Vacation (at Chambers) in the City of Batesville, Independence County, Arkansas, or at any other place designated for the convenience of the Court or parties to the Cause, and

that final decree may be entered the same as in regular term of the Court.

"4. This instrument is signed with the express understanding that defendant is to receive $100.00 per month, alimony from plaintiff. Plaintiff to have custody of child of parties."

About the middle of May, 1949 (according to a deposition of Eaton referred to hereafter), the Arkansas divorce suit was filed. In the proceedings Mrs. Eaton never appeared personally or through counsel, and she had no knowledge of the allegations of the petition which were:

"Harry A. Eaton, Jr., Plaintiff Versus No. 11,037 Nancy L. Eaton, Defendant — In the Chancery Court for the Northern District of Sharp County, Arkansas

* * * * * *

'The plaintiff for his cause of action against the defendant states and alleges: That he and defendant were married on the 15th [should be 27th] day of September, 1935, and lived together as husband and wife until on the 5th day of May, 1948, at which date left and abandoned plaintiff and continues so to do at this time.

"That one son, John Alex was born of this marriage whose custody has been agreed upon by the parties, and will be submitted to the Court.

"That the plaintiff is a bona fide resident of the Northern District of Sharp County, Arkansas, and has been such for the time required by law.

"Wherefore, Plaintiff prays that he be granted a decree of divorce from defendant, and the care and custody of said child awarded by the Court to the proper party and the agreement made by the parties hereto be approved by the Court and all proper relief.

> "Harry A. Eaton, Jr.
> By: Sidney Kelley
> His Attorney."

The record does not disclose the exact date of the filing of such petition, nor does it reveal that the allegations were verified by affidavit of Eaton or of his attorney.

The Arkansas divorce decree was rendered June 27, 1949, it having been predicated on Mrs. Eaton's executed waiver that was mailed to Eaton's Arkansas attorney and on Eaton's deposition in which he stated that he had lived in the Northern District of Sharp County, Arkansas, for more than two years and that he and his wife had been separated since May 5, 1948. (Under the Arkansas statutes, according to the record, a divorce may be granted "where either party wilfully deserts and absents himself or herself from the other for a space of one (1) year without reasonable cause", Ark.Stats. § 34–1202, and if the plaintiff proves "a residence in the State for three (3) months next before the final judgment granting a divorce in the action and a residence for two (2) months next before the commencement of the action". Ark.Stats. § 34–1208.)

Although answering Mrs. Eaton's allegations, as above shown, Eaton did not appear at the trial of the present cause to testify. In bar of plaintiff's demands herein he relied primarily on the Arkansas divorce decree, including his supporting testimony given by deposition. But with respect thereto the trial court has correctly found and observed as follows: " * * * I consider it pertinent to observe that the testimony adduced in this case by an overwhelming preponderance establishes the fact that the defendant in this case was not a resident of the State of Arkansas prior to the time he received the Arkansas decree. The testimony of Edward K. Elliott, the former husband of Kathleen Heard Elliott, shows that this defendant and Kathleen Heard Elliott were living together as man and wife in Crowley, Louisiana, in July, 1949, and that they moved from the apartment which they were renting at No. 424 North Avenue E, Crowley, Louisiana, on July 31, 1949. The testimony of Mrs. Paul Karre reflects that this defendant and a woman whom he introduced as his wife, rented an apartment from her at No. 424 North Avenue E, Crowley, Louisiana, and that they lived together in said apartment for a period from four to six months, and while she did not remember the exact dates the parties lived in the apartment, she did remember that the person introduced to her by the defendant as Mrs. Eaton gave birth to a child while living in said apartment. A photostatic copy of a birth certificate which

has been introduced in evidence and marked for identification as 'plaintiff's Exhibit 6', shows a child was born to Mrs. Harry A. Eaton, Jr. on June 14, 1949, at the Acadia Hospital in Crowley, Louisiana, and the address of the mother is given as No. 424 North E Street, Crowley, Louisiana. The photostatic copy of the birth certificate further shows that the father of this child was Harry A. Eaton, II, the defendant in this suit. Thus, if, as testified to by Mrs. Karre, the parties lived in her apartment for from four to six months, during which time a child was born, which the birth certificate reflects was June 14, 1949, and the testimony of Elliott shows his former wife and Eaton moved out of the apartment July 31, 1949, then Eaton was residing and domiciled in Crowley, Louisiana, during the whole of the three months prior to obtaining the Arkansas decree, which it is shown he was granted on June 27, 1949. I might further add in connection with the defendant's testimony in the Arkansas court, he stated he had resided in Arkansas for a period of two years, which could not possibly have been true, for the reason he did not separate from the present plaintiff until November, 1948, and most assuredly, since the Arkansas law requires to obtain a divorce on the ground of desertion, the deserter should have been gone for a period of one year, then there could not have been such period of time elapse at the time of the rendition of the Arkansas decree on June 27, 1949, even admitting the present plaintiff deserted the defend-

ant, for the reason that her testimony and that of her father unmistakably shows that she did not go to California until November, 1948. Of course, in line with the other perjured testimony given by this defendant, he stated that this plaintiff deserted him in May, 1948, which of course would have brought him just within the deadline of the one year period for desertion under the Arkansas Statute."

■ Therefore, since neither party was domiciled in Arkansas during the period required by its statutes, the courts of that state, undoubtedly, were without jurisdiction of the divorce proceeding. But the defendant herein contends that the Louisiana courts cannot question such jurisdiction, and that they must give full faith and credit to the Arkansas decree, in view of plaintiff's having executed the "Waiver of Summons and Entry of Appearance"—a contention that is to be considered and passed upon in the light of certain jurisprudence of the United States Supreme Court.

In the early case of Andrews v. Andrews, 188 U.S. 14, 23 S.Ct. 237, 47 L.Ed. 366, the court concluded that the Full Faith and Credit Clause of the Federal Constitution did not require a state to give recognition to a divorce judgment of a sister state in which no bona fide domicile had been acquired. Its holding was, in other words, that a divorce granted between parties through and by means of the perpetrating of "a fraud upon the law of their domicile

by temporarily sojourning in another State" need not be given full faith and credit in the state of their domicile, even though both appeared before the divorce court in the action.

However, in Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 and Coe v. Coe, 334 U.S. 378, 68 S.Ct. 1094, 92 L. Ed. 1451 (companion cases decided at the same term), the court held that where a party left the matrimonial domicile (Mass.) and acquired a residence in another state (Florida in one case, Nevada in the other) for the purpose of obtaining a divorce according to its laws, even though not with the intent to establish a bona fide domicile there, the other spouse could not collaterally attack the jurisdiction of the court granting the divorce. In each of these cases the party suing had fulfilled the residence requirement of the state in which the divorce was obtained, and the decree was valid there. Additionally, the other spouse appeared in person in the proceedings, both by pleadings and by giving testimony. The United States Supreme Court theorized that as such spouse had appeared and participated in the divorce proceedings without availing himself of the opportunity to raise the jurisdictional question the divorce court's finding of jurisdicton was res judicata and entitled to full faith and credit in Massachusetts.

The doctrine of those cases was extended in Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 477, 95 L.Ed. 552. There a daughter of a first marriage sought to have her deceased father's third marriage decreed a nullity, she showing that he and his second wife were domiciled in the State of New York when the latter went to Florida and instituted proceedings which culminated in a judgment of divorce. The daughter further showed that the second wife had not resided in Florida the requisite length of time to vest the court of that state with jurisdiction. However, the husband, through counsel, had appeared and answered the petition and had participated in the proceedings. The court held that in view of such appearance and participation by the husband the question of the jurisdiction of the divorce court could not be relitigated. Among other things it stated: "It is clear from the foregoing that, under our decisions, a state by virtue of the clause must give full faith and credit to an out-of-state divorce by barring either party to that divorce who has been personally served or who has entered a personal appearance from collaterally attacking the decree. * * *"

In Cook v. Cook, 342 U.S. 126, 72 S.Ct. 157, 159, 96 L.Ed. 146, there existed a situation somewhat similar to that of the Johnson case. The wife who obtained the assailed divorce had not acquired a residence under the laws of Florida—the state in which it was granted; she received her decree "by deceiving the Florida court as to her domicile". The United States Supreme Court held that the record did not

show whether or not the defendant husband had been served in Florida or had appeared in the suit; and, hence, it remanded the case for the purpose of receiving evidence respecting these questions. In so ruling it observed:

" * * * If the defendant spouse appeared in the Florida proceedings and contested the issue of the wife's domicile * * * or appeared and admitted her Florida domicile * * * or was personally served in the divorce state * * *, he would be barred from attacking the decree collaterally; and so would a stranger to the Florida proceedings, such as respondent, unless Florida applies a less strict rule of res judicata to the second husband than it does to the first. * * *

\* \* \* \* \* \*

"The Florida decree is entitled to that presumption [that there was jurisdiction over the subject matter and persons]. That presumption may of course be overcome by showing, for example, that Mann *never was served in Florida nor made an appearance* in the case either generally or specially *to contest the jurisdictional issues.* * * *" (Brackets and italics ours.)

■ Reverting to the present case, the defendant in the divorce action (plaintiff here) was not served in Arkansas nor did she appear in such action to contest the jurisdictional issues. True, she signed the above quoted, so-called "Waiver of Summons and Entry of Appearance" mailed to her by the husband. But neither she nor her attorney filed it in the divorce proceedings. The executed document was forwarded to and handled by the husband's Arkansas attorney. Moreover, he received it even before the commencement of the divorce action. Consequently, it cannot be correctly said that the question of requisite residence, and hence the jurisdiction of the Arkansas court, has been litigated by the parties. Rather, appropriate and correct would be the statement that the proceedings in the Arkansas court, neither party having been properly before that tribunal, is to be viewed merely as a means for providing a "mail-order" divorce.

Since the circumstances outlined above render inapplicable here the doctrines of the Sherrer, Coe, Johnson and Cook cases (on which defense counsel rely), and it clearly appearing that the Arkansas court lacked jurisdiction of the divorce action in question under its own laws, we conclude and hold, as did the trial judge, that the courts of this state are not required to give full faith and credit to the Arkansas decree pleaded by this defendant.

In this conclusion we are supported by the cases of Brasier v. Brasier, 200 Okl. 689, 200 P.2d 427, Davis v. Davis, 259 Wis 1, 47 N.W.2d 338, and Staedler v. Staedler, 6 N.J. 380, 78 A.2d 896, 28 A.L.R.2d 1291, in each of which the court held that the divorce decree of a sister state could be attacked collaterally since in the action for

the divorce the question of jurisdiction had not been litigated and the defendant had made no personal appearance.

The facts of the Brasier case were practically identical with those of the instant cause, even with respect to the wife's having signed the entry of appearance on which an Arkansas divorce decree was largely predicated. As to such document the Oklahoma court said [200 Okl. 689, 200 P. 431]: "While the record reflects that plaintiff, defendant in the Arkansas proceedings, signed her entry of appearance, it is further revealed that she filed no pleadings in the action, was not represented by counsel, and was not present at the trial when the defendant secured the decree of divorce, and no issue was presented to the Arkansas court relating to the jurisdictional requirement of defendant's domicil there."

In the divorce action involved in the Davis case [259 Wis. 1, 47 N.W.2d 341] the wife had entered a "formal special appearance by counsel". The Wisconsin court, after referring to the above quoted excerpt from the opinion of the United States Supreme Court in the Johnson case made the following observation:

"* * * We know 'general' and 'special' appearances but we have little help from the books in construing 'personal appearance'. We conclude that the court means that the party came into court in his or her own person, as the party had done in the Sherrer and Coe cases, which the court had just referred to. Mrs. Lois Davis did not thus 'personally' appear.

"Under these circumstances we do not consider that the federal constitution nor the decisions interpreting it have called upon Wisconsin to surrender to the courts of another state this remnant of its historic right to determine for itself the marital status of its own residents, and we shall not surrender it until higher authority, speaking on the instant facts or on others which are indistinguishable, requires us to do so."

In the Staedler case the wife, against whom the attacked divorce was granted, had been represented by counsel whose services were arranged for and paid by the husband (the court found that actually he was the husband's agent). The following was said by the New Jersey court [6 N.J. 380, 78 A.2d 902]: "We are firmly of the opinion that the principles of the Sherrer, supra, and Coe, supra, cases only apply to a true adversary proceeding where the parties are represented by counsel of their independent choice and where there is an opportunity to make a voluntary decision on the question as to whether or not the case should be fully litigated either on the question of jurisdiction or the merits, and that once an election has been made by the defendant under such circumstances and conditions that then and then alone can the judgment of the court be res adjudicata and the full faith and credit clause operate

for the advancement of justice rather than for the perpetuation of a fraud."

Appellant urges also, as is pointed out earlier in this opinion, that Mrs. Eaton is estopped from questioning the Arkansas decree. His plea of estoppel is based principally on our decision in Rousse v. Rousse, 219 La. 1065, 55 So.2d 246, 248. In that case the plaintiff was seeking to be declared the widow of John E. Rousse, deceased, and as such entitled to participate in his estate. The defendant conceded plaintiff's former marriage to Rousse, but she pleaded that it had been dissolved by a Mississippi divorce decree. In affirming the judgment dismissing the suit, we said:

"* * * It is admitted that the judgment and decree of divorce obtained in Mississippi could be collaterally attacked on the basis of lack of jurisdiction in the Mississippi Court. However, here we are concerned with the right of this particular plaintiff who, as the facts reveal, having knowledge thereof, acquiesced in the judgment of divorce by remarrying herself and three years thereafter having this marriage revalidated in Church, and then after remaining silent fourteen years longer while her former husband was alive, now urges its invalidity and its nullity.

\* \* \* \* \* \*

"Under our jurisprudence estoppel is based on a course of action pursued by a person which results to his detriment and prejudice and which he would

not have followed had he not been mislead by the actions of another party. On that principle it may well be that as far as the defendant Thelma Stroble Rousse is concerned, estoppel does arise because had it not been for the judgment of divorce obtained by him from the plaintiff and plaintiff's own subsequent remarriage she probably would never have married John E. Rousse herself.

"But the question involved here is not so much one of estoppel as it is of acquiescence. * * *

\* \* \* \* \* \*

"The principle upon which cases of this character should be decided is that no one can accept the benefits of a judgment and then be heard to assert its nullity and invalidity. * * * we may well assume that plaintiff's right to attack the judgment of divorce rendered in Mississippi once existed, but having acquiesced in it by remarrying, that being the only authority under which she could have done so, she has lost her right and her demand must now be refused."

There is nothing in the record of the instant case even suggesting that this plaintiff has acquiesced in the judgment by entering into a second marriage. Nor, incidentally, is it clearly shown by the evidence that any one else has since married Eaton and, hence, has acted on the strength of the Arkansas divorce decree. The Rousse case, therefore, is not controlling here.

 Plaintiff's having accepted the so-called alimony payments (defendant paid her $100 per month for a total of only six months) cannot be considered as an act which would estop her from contesting the divorce since her husband, in making such payments, was merely doing what he was obligated to do in view of their marital status and her necessitous circumstances.

Neither does the acceptance of a share of the community, under the circumstances disclosed by the record, constitute an estoppel as to the attack on the Arkansas divorce decree. The defendant has not shown that he was mislead or injured in any way by such action on the part of the plaintiff. As is pointed out in the Rousse case "estoppel is based on a course of action pursued by a person which results to his detriment and prejudice and which he would not have followed had he not been mislead by the actions of another party." And, as stated in Harvey v. Richard, 200 La. 97, 7 So.2d 674, 677, "The cases holding that estoppels are not favored by our courts are legion in our jurisprudence. Whenever estoppel is pleaded as an element of a cause of action, it must be pleaded specifically, the burden of proving the facts upon which the estoppel is founded, as well as the affirmative showing that he was misled by the acts and forced to act to his prejudice, resting upon the party invoking the doctrine. * * *" See also Arkansas Louisiana Gas Company v. Thompson, 222 La. 868, 64 So.2d 202 and Parker v. Ohio Oil Company, 191 La. 896,

186 So. 604. The defendant herein offered no proof whatever in support of his plea of estoppel. (Incidentally, in the settlement, according to the record, plaintiff received two vacant lots of ground. However, because of delinquent installments due on the purchase price she was forced to surrender them to the vendors. And for her equity therein she was paid a total of only $400, a great portion of which she used for expenses in traveling from California to Massachusetts where she subsequently lived for a number of months with Eaton's mother.)

For the reasons assigned the judgment appealed from is affirmed.