345 So.2d 586 (1977)
Mrs. Nancy Riddle, wife of Curtis H. EVERETT
v.
Curtis H. EVERETT.
No. 8033.
Court of Appeal of Louisiana, Fourth Circuit.
April 13, 1977.
Rehearing Denied May 17, 1977.
*587 Sidney J. Parlongue and Philip R. Riegel, Jr., New Orleans, for plaintiff-appellant.
Steven R. Plotkin and John William Corrington, New Orleans, for defendant-appellee.
Before GULOTTA, STOULIG and SCHOTT, JJ.
This is a suit by the wife for divorce based upon allegations that her husband committed adultery on two occasions in September, 1975.
The evidence established that these parties together consulted an attorney in July, 1975, for the purpose of securing a quick divorce. He advised them to proceed with the divorce in the Dominican Republic and prepared a special power of attorney by which plaintiff appointed a lawyer in the Dominican Republic to represent her, make a personal appearance in her behalf and submit without qualification to the jurisdiction of that court. They also entered into an agreement with respect to a division of community property, and payments to be made to the wife following the divorce. On July 30 defendant secured his Dominical Republic divorce as planned and the terms of the settlement agreement were carried out until October when this action was filed.
Two detectives testified that they conducted a surveillance of defendant on the September dates in question and observed him and the co-respondent entering his home early in the evening and remaining until the next morning. All lights in the house were extinguished. Defendant admitted that the co-respondent was in his home on the two nights involved, but denied committing adultery claiming that he slept in the upstairs bedroom and she slept downstairs. No one else was in the home. He also admitted that he took the co-respondent on a trip to Europe in August, and that she moved in to live with him in October and November.
The trial judge found that the Dominican Republic divorce was invalid but that plaintiff was estopped from bringing the action. In his reasons for judgment, he made the following observations:
"The Court believes that both parties wanted a divorce and that Mrs. Everett voluntarily signed the power of attorney enabling Mr. Everett to proceed with the divorce in the Dominican Republic. It appears that Mr. Everett relied on these representations and, after returning from the Dominican Republic, changed his position and lived his life as a single man. Although the Court is aware that estoppels are not favored in our law, it believes that the necessary requirements as set forth in the case of Wilkinson v. Wilkinson, 323 So.2d [120] (La.Sup.Ct., 1975) have been met and that it would indeed be unjust and inequitable to hold that Mr. Everett had been guilty of adultery under these circumstances."
The trial court also found that the evidence was insufficient to prove that defendant committed adultery on the two occasions pleaded.
Both parties appealed from the judgment, defendant claiming that the Dominican Republic divorce was valid.
In Clark v. Clark, 192 So.2d 594 (La. App.3rd Cir. 1966) the validity of a Mexican *588 divorce was at issue. The court started with the proposition that even with respect to a divorce obtained in one of Louisiana's sister states our courts have refused to recognize the divorce as valid when the moving party did not establish a bona fide domicile in the sister state. This principle applies in the face of the full faith and credit clause of the Constitution of the United States so that surely it applies to a divorce obtained in a foreign country. The court concluded:
"Under the universally acknowledged principle that the judicial power to grant a divorce is founded on domicile, and because the plaintiff and defendant admittedly went to Mexico for the sole purpose of obtaining their respective divorces, we hold that the divorces thus obtained were patently invalid and of no effect whatsoever."
Defendant has cited cases from New York which have departed from the bona fide domicile rule in cases where both spouses have voluntarily submitted to the jurisdiction of a sister state or even a foreign country, but no Louisiana case has been cited by him or found by us which supports this view. The annotation at 13 A.L.R.3d 1424 states that New York stands alone among the states in departing from the general rule that the tests of jurisdiction applied by the courts in the United States are those of the states rather than the divorcing country and a divorce obtained in a foreign country will normally not be recognized as valid if neither spouse had a domicile in that country, even though domicile is not required for jurisdiction by its laws.
We are not persuaded by the arguments advanced by defendant with respect to comity. No attempt was made to prove facts making comity applicable to this situation in the first instance. Nor are we impressed with the argument that this is a problem affecting only the individuals and does not involve "compelling state interests." We think that the state does have an interest in having a clear cut determination as to the status of its citizens and it should not recognize a quick divorce obtained by its citizens on overnight trips to foreign countries where attitudes and philosophies of the courts, as well as concepts of substantive and procedural due process, are entirely unknown and probably inconsistent with our own.
Having concluded that the divorce was invalid, as did the trial court, thereby disposing of defendant's appeal, we turn to the primary basis on which the trial judge decided this case, to wit, that plaintiff was estopped from bringing the action.
The principle of estoppel applies if there are three elements present, 1) a representation by conduct or word, 2) justifiable reliance, and 3) a change in position to one's detriment because of the reliance. Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975). We do not agree with the trial court that the facts of this case support the application of the principle.
Defendant testified that when the arrangements were made with his wife and the attorney in New Orleans for him to secure the Dominical Republic divorce the attorney told him that the divorce was valid. Plaintiff testified to the same effect, although she claimed that she had doubts about the validity of the proposed divorce. However, she admitted that she did nothing by way of subsequent protest, she made no statement to her husband or his attorney as to her doubt about the divorce's validity, and she accepted $500 and some movable property in August as provided for in the settlement agreement.
At the outset of this discussion, we should consider precisely what plaintiff was said to be estopped from doing. It can hardly be said that she was estopped from seeking a divorce since we have concluded that the Dominican Republic divorce was invalid with the result that her marriage was still intact. Even if the above referred to elements of estoppel were established by the evidence in this case, it cannot be said that plaintiff was estopped from seeking a valid divorce. This seems consistent with Barringer v. Dauernheim, 127 La. 679, 53 *589 So. 923 (1910). In that case, the wife brought suit for a divorce alleging that the husband had obtained a fraudulent divorce in Texas and thereafter entered into a second marriage. The wife alleged that the husband was committing adultery since he was not legitimately divorced before his remarriage. While there was no active participation in the Texas divorce by the wife and while the only evidence supporting the jurisdiction of the Texas court was a return showing personal service of the summons on the wife the court's disposition of the plea of estoppel seems applicable to the instant case, as follows:
"The plea of estoppel cannot avail, as against the demand for a divorce. The marriage status of the parties is a matter of public interest. Parties can neither dissolve their marriage by consent, nor make it indissoluble or perpetual by consent. If one of them have a cause for divorce, the state has an interest in having the divorce pronounced. The state has an interest that the plaintiff in the present case be not kept in the anomalous position of a married woman who cannot apply to the court for a divorce although her husband is living with another woman. If plaintiff have good ground for divorce and be desirous of remarrying, the state has an interest in her being divorced and allowed to remarry."
The question then becomes whether estoppel can be said to preclude plaintiff from bringing the action for divorce based on adultery; that is, whether she was estopped from urging adultery as a ground for her divorce even though she may not be estopped from seeking a valid divorce on other grounds. We have concluded that she is not because the first necessary element to support estoppel is not here present, i. e., there was no representation on the wife's part by conduct or word on which the husband relied to his detriment. The evidence shows that the representation relied on, to wit, the validity of the Dominican Republic divorce, was not made by plaintiff but rather by an attorney at law consulted by both parties. Defendant specifically testified that he was told by the attorney that his divorce would be valid. Plaintiff could not make such a representation and even if she had defendant would not have been justified in relying on her words to that effect. The best that can be said for defendant is that his wife was given the same advice as he was; namely, that the divorce would be valid. This is not a case where there was any connivance on the part of the wife to induce the husband to commit adultery but rather where both parties were misled by a third party into thinking that such divorce would be valid and the husband acted on that advice to his detriment.
Nor does plaintiff's accepting a $500 payment and some movables in August pursuant to the July settlement agreement provide a basis for estoppel. Eaton v. Eaton, 227 La. 992, 81 So.2d 371 (1955) is dispositive of this point. By making the payment defendant here was simply meeting his obligation to his wife. It was not this conduct by plaintiff which constituted a representation that the Dominican Republic divorce was valid and that he was again a single man.
Having concluded that plaintiff is not estopped from bringing this action, we must now consider whether her evidence was sufficient to prove adultery by defendant. The trial judge gave the following reasons on this point:
"Moreover, the Court is not convinced that the plaintiff has proved her allegations of adultery with the certainty required by law. The Court is aware that adultery can be proven by circumstantial evidence. However, it must be so strong as to exclude every other reasonable hypotheses. Here, the plaintiff has alleged only two instances of adultery on two specific dates. She relies heavily on the testimony of two private detectives to prove her allegations.
"The detectives gave a general description of the results of their surveillances on the dates in question. However, it is apparent that they did not know the internal layout of the house nor could they see the rear of the house from their observation point. In short, the Court was *590 not impressed with their testimony. Additionally, it was revealed that the defendant knew he was being watched on these occasions and he specifically denied having relations with the alleged co-respondent on the dates in question."
There is no question in this case about the credibility of the detectives or the quality of their work. Their testimony that the co-respondent spent the two nights with defendant in his home was admitted by him. His testimony that he slept in an upstairs bedroom and she slept downstairs and his denial that adultery was committed must be considered in the light of the circumstances where he admitted that he was conducting an amorous affair with the co-respondent throughout this period. Under the prevailing jurisprudence the evidence was quite sufficient to support plaintiff's case. Hermes v. Hermes, 287 So.2d 789 (La.1974); Udin v. Udin, 273 So.2d 56 (La. App. 4th Cir. 1973). To hold otherwise in this case would be a throw back to the old cases which required the married person to catch the spouse in the act in order to prove adultery. Courts are a bit more sophisticated today and infer that people do what comes naturally when they have the opportunity.
Accordingly, the judgment appealed from is reversed and set aside, and there is judgment in favor of plaintiff, Mrs. Nancy Riddle Everett, and against defendant, Curtis H. Everett, decreeing a divorce of vinculo matrimonii forever dissolving the bonds of matrimony heretofore existing between them.
REVERSED AND RENDERED