379 So.2d 864 (1980)
Eugene E. SCHAEFER, Jr.
v.
Judith McCasland, Wife of Eugene E. SCHAEFER, Jr.
No. 10702.
Court of Appeal of Louisiana, Fourth Circuit.
January 10, 1980.
Rehearing Denied February 20, 1980.
*865 Harry A. Burglass and Phyllis C. Coci, Metairie, for plaintiff-appellee.
Dymond, Crull & Castaing, F. Irvin Dymond, Edward J. Castaing, Jr., Carol Lynn Doskey, New Orleans, for defendant-appellant.
Before SAMUEL, LEMMON and GULOTTA, JJ.
GULOTTA, Judge.
Judith Schaefer appeals from a judgment annulling her marriage to plaintiff and declaring that she is not a putative wife. We affirm.
Defendant claims the trial judge erred (1) in concluding that a Dominican Republic divorce was invalid; (2) in failing to hold that Eugene Schaefer was estopped from attacking the validity of the foreign decree; and (3) in finding that Judith was not a putative wife.
The parties to this litigation were married in the Parish of Jefferson on February 12, 1975, after Eugene Schaefer had obtained a divorce from his former wife in the Dominican Republic on January 28, 1975. In January 1976, subsequent to his foreign divorce and his marriage to Judith, Eugene obtained a Louisiana decree divorcing his former wife. Judith Schaefer testified that she and Eugene had gone to Santo Domingo for the purpose of obtaining the divorce, even though they knew he would ultimately obtain a Louisiana divorce, because "we had been living together since November and it didn't look good to his friends." Some time after the Louisiana divorce decree was obtained, discord apparently developed between the parties and in June 1978 Eugene filed a suit for annulment of the February 12, 1975 marriage based on the invalidity of the foreign decree. The parties had never undergone a marriage ceremony subsequent to the 1976 Louisiana divorce decree between Eugene and his former wife.
At the outset we reject Judith's contention that the trial judge erred in finding the Dominican Republic divorce invalid. The testimony is uncontradicted that Eugene, although a resident of the State of Louisiana, went to Santo Domingo with Judith specifically to obtain the foreign divorce decree, returning to Louisiana immediately afterward. As far as we can determine from the record, Eugene's former wife did not give her mutual consent for the divorce; notice to the former wife was apparently through a three-week listing, in a Dominican Republic newspaper, of intent to obtain a divorce. There is no evidence that Eugene's *866 former wife had signed a power of attorney or was represented by counsel.
In Super v. Burke, 367 So.2d 93 (La. App. 4th Cir. 1979), affirmed La., 374 So.2d 1250, this court affirmed a judgment holding a Dominican Republic divorce invalid under circumstances factually similar to the instant case. (Unlike our case, however, the absent wife in the Super case had signed a power of attorney and was represented by counsel in the Dominican Republic.) See also Everett v. Everett, 345 So.2d 586 (La.App. 4th Cir. 1977), writ denied La., 349 So.2d 329. We have no difficulty in concluding in our case that the trial judge was correct in his finding that the Dominican Republic divorce decree was invalid.
We reject Judith's claim that Eugene was estopped from asserting the invalidity of the foreign decree because he married Judith in a Louisiana ceremony in reliance on that decree.
In Super v. Burke, supra, we were confronted with the same argument and rejected it, on the ground that estoppel cannot be urged to impair the force and effect of a prohibitory provision of law. We stated that when one of the contracting parties was legally married at the time of the confection of the second marriage, the purported marriage is an absolute nullity and may be impeached by either of the parties to the marriage or by any other party in interest. See also Louisiana Civil Code article 93; Everett v. Everett, supra; Clark v. Clark, 192 So.2d 594 (La.App. 3rd Cir. 1966); Burrell v. Burrell, 154 So.2d 103 (La.App. 1st Cir. 1963); Prieto v. Succ. of Prieto, 165 La. 710, 115 So. 911 (1928).
We conclude, therefore, that Eugene Schaefer was not estopped from asserting the invalidity of the foreign divorce decree.
Finally, we find no merit to Judith's contention that the trial judge erroneously concluded she was not a putative wife. In order to be entitled to the benefits of the civil effects flowing from a putative marriage, a person must have acted in good faith at the time the marriage was contracted. LSA-C.C. arts. 117 and 118. Furthermore, a determination of good faith depends on the facts and circumstances in each case. Succ. of Zinsel, 360 So.2d 587 (La.App. 4th Cir. 1978), writs denied La., 363 So.2d 72; Succ. of Hopkins, 114 So.2d 742 (La.App. 1st Cir. 1959). It is presumed that a marriage was contracted in good faith, and the burden of proving the contrary rests on the party who alleges it. Succession of Pigg, 228 La. 799, 84 So.2d 196 (1955).
In the instant case the trial judge found, in written reasons for judgment, that Judith Schaefer was not in good faith at the time of the February 12, 1975 marriage and subsequent to the marriage because she was aware that the foreign divorce was "clouded." He then concluded that she is not entitled to the status of a putative wife. Because of the contradictory nature of the testimony relating to Judith's awareness or lack of awareness of the questionable validity of the foreign decree, it is clear that the court's conclusions, absent manifest error, should not be disturbed on appeal. We find no such error.
Eugene Schaefer testified that Judith was present during all discussions relating to the arrangements for the Dominican Republic divorce. The legality or illegality of that decree was discussed with her and with others in her presence. According to plaintiff, Judith was with him when he sought legal advice and was told by an attorney that no problem existed insofar as the foreign decree is concerned "if nobody contested the marriage." Eugene testified further that the questionable nature of the foreign decree was discussed on many occasions with Judith, and that both were concerned about the invalidity of the decree. They had discussed, according to Eugene Schaefer, the possibility of remarriage after the Louisiana divorce decree had been obtained. He also stated that Dominican Republic counsel advised the parties that, lacking the consent of Schaefer's former wife, he could not assure them of the validity of the foreign decree.
*867 Although Judith testified that she "never questioned" the validity of plaintiff's foreign divorce, and she denied questioning its illegality with other persons, her testimony was contradicted by three mutual friends of the parties. Marshall Pierce testified that shortly after the Dominican Republic divorce, plaintiff and defendant had discussed with him the question of the legality of their marriage because of the questionable validity of the foreign decree. He stated further that part of the discussion related to the parties becoming remarried after Eugene obtained the Louisiana divorce decree.
Michael and Jeannette Belsley, mutual friends of the Schaefers, testified by deposition concerning discussions with plaintiff and defendant about the invalidity of the foreign divorce decree. Jeannette Belsley testified these discussions began in February 1978, when Gene Schaefer announced one night that he had just discovered his marriage to Judy might be invalid. According to Michael Belsley, the Schaefers both showed concern that their marriage might not be valid. Mr. Belsley testified further that there were two or three other discussions, subsequent to the initial one, concerning the foreign divorce and subsequent marriage. Jeannette Belsley generally corroborated the testimony of her husband, and said that at the time of the initial discussion both Gene and Judy appeared surprised and upset.
In additional reasons, the trial judge stated:
"It is the opinion of the court that considering the totality of events, the fact that defendant accompanied plaintiff to the Dominican Republic to be with him when he obtained his speedy divorce, and that she later learned that the divorce was questionable, takes her out of the good faith shelter ..."
The record clearly supports the trial court's opinion. Having so concluded, we affirm the judgment of the trial court.
AFFIRMED.