513 So.2d 1220 (1987)
Mary Ann Gaudin, wife of Gustave Joseph MARA
v.
Gustave Joseph MARA.
No. CA 7124.
Court of Appeal of Louisiana, Fourth Circuit.
August 26, 1987.
Rehearing Denied November 10, 1987.
Bernard M. Plaia, Jr., Metairie, for Mary Ann Gaudin.
Salvador G. Longoria, Michele Gaudin, Gaudin and Longoria, Cindy M. Harris, New Orleans, for Gustave Joseph Mara.
Before CIACCIO, WARD and WILLIAMS, JJ.
*1221 CIACCIO, Judge.
Plaintiff, Mary Gaudin Mara and defendant, Gustave Joseph Mara each appeal from a judgment of the district court which partitioned the community of acquets and gains existing between them. We amend the judgment of the district court and as amended the judgment is affirmed.
Mr. and Mrs. Mara were married on June 1, 1968. They lived together as husband and wife from the date of their marriage until November, 1974. Prior to this marriage, Mrs. Mara had been married to John Buglione. Although she never lived in Alabama, Mrs. Mara traveled there in April 1968 before her marriage to the defendant in order to secure a divorce from Mr. Buglione. Mrs. Mara was transported to Alabama by Mr. Mara and she used the $350 given to her by him to pay the lawyer in Alabama for her divorce. She thereupon received papers which she considered to be her divorce decree. In late April, 1973, Mr. Mara desired to adopt the plaintiff's child by a prior marriage. In preparing for the adoption, Mr. Mara sought a certified copy of his wife's divorce decree from the court in Alabama. He was thereafter advised that no such decree existed. The couple, although aware that Mrs. Mara was not divorced from her prior husband, continued to live together until the time of physical separation. According to the defendant, he had planned to marry the plaintiff but she did not desire to marry him at that time.
On October 10, 1974, Mr. Mara filed an action to nullify his marriage to the plaintiff. He was granted a judgment nullifying the marriage on April 25, 1975.
On July 12, 1981, Mrs. Mara filed a Petition to Partition the community property. On appeal, this Court decided that a putative community existed between these parties and we remanded the case for a partition of the community. Mara v. Mara, 452 So.2d 329, 333 (La.App., 4th Cir., 1984).
On January 23, 1986, the district court issued the following judgment of partition:
IT IS ORDERED, ADJUDGED AND DECREED that the assets of the putative community formerly existing between Mrs. Mara (Now Mrs. Gaudin) and Mr. Mara are as follows:
1) Mr. Mara's pension with Reilly, Inc. Coffee Company
2) The family home at 4968 Copernicus St.
3) Some of the contents of the family home
4. Mr. Mara's gun collection
5) A 1970 Volkswagon
6) A Plymouth Station Wagon
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the value of the community assets is as follows:

1) House $51,000.00
2) Gun Collection $3,500.00
3) Savings account (spent by Mr.
 Mara) $2,000.00
4) Rent received by Mr. Mara $2,000.00
 __________
 TOTAL $57,500.00

The community liabilities are as follows:

1) Mortgage on house $13,853.00
2) One half mortgage payments paid
 by Mr. Mara $10,200.00
3) Community debts paid by Mr.
 Mara $2,000.00
 __________
 TOTAL $25,035.00
 The net value of the community
 assets is $31,465.00

All of the community assets and liabilities are assigned to Mr. Mara. Mr. Mara is to pay to Mrs. Gaudin the sum of $15,732.50 to compensate her for her interest and she is discharged from any further liability for the community debts. Mr. Mara has possession of the house and gun collection since the separation and they shall be his separate property.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Mrs. Gaudin is entitled to receive from Mr. Mara's pension, when and if paid, one half of the amount thereof earned during the existence of the community.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Mr. Mara pay to Mrs. Gaudin the value of two shares of Westinghouse stock, valued as of the date of the trial herein which was September 26, 1985.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Mrs.

*1222 Gaudin and Mr. Mara are put in possession of their separate furniture.

* * * * * *
On appeal, each party complains of specific evaluations made by the trial court in its judgment of partition.
Defendant, Gustave Mara, suggests that this case should be remanded to the district court for a determination as to when the parties' putative marriage ended. He alleges that the trial judge's valuation of the community assets was in error because he failed to take into consideration the termination of the community which he alleges occurred prior to the judgment of partition. We agree with the defendant's assertion that the community between the parties terminated prior to the judgment of partition. Since we can establish the date of termination, we decline to remand the case for that purpose.
A good faith putative spouse is one who has an honest, reasonable belief that the marriage confected is valid. Zanders v. Zanders, 434 So.2d 1213 (La.App., 1st Cir.1983). Once the putative spouse becomes aware of an impediment to the marriage or apprises himself of facts which mandate an investigation of his marital status, he loses his status as a "good faith" putative spouse. Succession of Hopkins, 114 So.2d 742 (La.App., 1st Cir., 1959). The facts and circumstances of each case determines the existence and duration of the good faith of the parties. See: Schaefer v. Schaefer, 379 So.2d 864 (La.App., 4th Cir., 1980) writ den., 383 So.2d 13. Once the putative status ceases, the civil effects of the putative marriage cease to flow. Evans v. Eureka Grand Lodge, 149 So. 305 (La.App., 2d Cir., 1933).
In our prior decision involving these litigants, this Court determined that the plaintiff was the putative wife of the defendant and the civil effects of marriage flowed from this union. Mara v. Mara, 452 So.2d 329 (La.App., 4th Cir., 1984). As such, we determined that a community of acquets and gains existed between the parties. Mara v. Mara, supra. We were not called upon at that time to determine, nor did we determine, the date of the termination of the community. We did determine, however, that the couple received notice on April 23, 1973 that there was no record of Mrs. Mara's prior divorce proceedings. In our opinion, this notice was sufficient to apprise these litigants that an impediment existed to their marriage. As such we find that the putative marriage of the plaintiff and defendant terminated as of April 23, 1973. Since these parties' good faith ceased as of that date, so also did the civil effects flowing from the putative marriage. Accordingly, this date, April 23, 1973, marks the effective termination date for the community of acquets and gains. All assets acquired or liabilities incurred after this date would presumptively be the separate property or obligations of the respective individuals. Thus, it was error for the trial judge to fail to consider this fact in evaluating the assets and liabilities of the litigants.
Pension Plan
The defendant argues that the record is insufficient to determine the community interest or percentage in his pension plan since the community's date of termination had not been established by the trial court.
The record reveals that Mr. Mara was married to the plaintiff on June 1, 1968. He had worked for Reilly Coffee Company since February or March, 1968.
The trial judge recognized Mr. Mara's pension rights as an asset of the community. He held that Mrs. Gaudin was "entitled to receive from Mr. Mara's pension, when and if paid, one half of the amount thereof earned during the existence of the community." We find no error in that regard. We further clarify the judgment by specifying the duration of the community as existing from June 1, 1968 until April 23, 1973. Accordingly under the formula set forth in Sims v. Sims, 358 So.2d 919 (La., 1978), the plaintiff would be entitled to benefits as follows:
*1223
Portion of pension attributable
to creditable service during existence
of community
(4 years 10 months) × ½ × annuity
Pension attributable to total (or lump sum
creditable service payment)
(still undetermined)

Mortgage Payments and Rental Factor
Subsequent to their separation, Mr. Mara continued to make the monthly mortgage payments on the family home with his separate funds. The trial court ordered that one half of the total payments be reimbursed to Mr. Mara but charged this amount ($10,200.00) as a debt of the community. Mr. Mara alleges that this was in error, and, relying upon L.S.A. C.C. Art. 2365 and upon our decision in Davezac v. Davezac, 483 So.2d 1197 (La.App. 4th Cir., 1986), urges that he should be reimbursed Mrs. Mara's half of the debt from her share of the community.
Mrs. Mara contends that the trial judge was correct since the Davezac case, supra, was decided subsequent to the date of this judgment, and, therefore, the trial court was correct in relying upon Patin v. Patin, 462 So.2d 1356 (La.App., 3rd Cir., 1985), writ den. 466 So.2d 470 (1985) and Gachez v. Gachez, 451 So.2d 608 (La.App., 5th Cir., 1984) writ den. 456 So.2d 166 (La.1984), which held that such a debt was to be paid from the mass of the community.
Civil Code Article 2365 provides for satisfaction, between spouses, of a community debt which is paid with separate funds:
LSA C.C. Art. 2365
Art. 2365. Satisfaction of community obligation with separate property
If separate property of a spouse has been used to satisfy a community obligation, the spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used.

* * * * * *
Although the Davezac decision was rendered subsequent to the judgment in the trial court we find it to be controlling in this case. Accordingly, we agree with Mr. Mara that the wife's one-half (½) of the total mortgage payments shall be charged as a debt against her share of the community assets. In this case the parties stipulated that the defendant paid $20,400.00 in mortgage payments with his separate funds and, accordingly, one-half (½) of the total payments or the sum of $10,200.00 shall be charged against Mrs. Mara's share of the community.
Mrs. Mara urges that should this court apply the Davezac formula, equity and justice require that we likewise apply the provisions of R.S. 9:308(B) and charge Mr. Mara for the rental value of the house during his exclusive use and occupancy of it. We agree.
Although most prior cases denied a rental reimbursement to the non-occupying spouse, our courts have not been uniform in their treatment of claims for reimbursement for payments made out of separate funds for mortgages owed on community real property and movable property. Even in Davezac, supra, the spouse who retained sole possession of a community automobile was denied reimbursement for the payments he made on the chattel mortgage with his separate funds. Any prior decisions which denied reimbursement of rental value to the non-occupying spouse have been legislatively overruled by R.S. 9:308(B), now leaving the assessment of a rental factor to the discretion of the courts.
In Patin v. Patin, supra, the court affirmed the judgment of the trial court which charged the wife for her use of the community home from the date of termination of the community until the judgment of partition. The court relied upon La. C.C. Art. 2369 which requires a spouse to render an accounting to the other spouse for community property under his control at the termination of the community property regime.
The court reasoned:
The community existing between the parties was terminated by the judgment of separation and from that point on, but for her use of the community home Mrs. Patin would have been forced to pay rent, as Mr. Patin was forced to do. The funds that she would have been forced to *1224 pay as rent have remained in her control for investment purposes. This use has benefited her separate estate and Mr. Patin was properly reimbursed for one-half the value of the community property used at the time it was used to benefit Mrs. Patin's separate estate. Patin v. Patin, supra at p. 1358.
The non-occupying spouse was awarded a credit for one-half of the rental value of $750.00 per month established by the testimony of a rental expert.
In LeBlanc v. LeBlanc, 490 So.2d 763 (La.App. 3rd Cir.1986), writ den. 494 So.2d 332 (1986) the court affirmed a judgment awarding to the wife rent on the community home for those past separation months in which the home was occupied by the defendant alone, citing LSA-R.S. 9:308(B).
We have previously held that the community existing between plaintiff and defendant terminated on April 23, 1983. Following the reasoning of Patin, supra and LeBlanc, supra, the defendant owes an accounting to plaintiff for the period of time he enjoyed sole occupancy of the community property.
Our review of the record indicates that from December 10, 1974 through August 1, 1984, the period of time that Mr. Mara was the sole occupant of the family home he paid total house payments, (including principal, interest, taxes and insurance) ranging from a low of $131.00 per month to a high of $185.00 per month. During a portion of this time, Mrs. Mara rented an apartment for $300.00 per month and then rented a government subsidized apartment of $150.00 per month. During 1984 and 1985 Mr. Mara rented the family home for $225.00 per month and $400.00 per month. Under these circumstances we find that the trial court erred in not assessing Mr. Mara with a rental factor for his 10 year occupancy of the family home. We conclude that the rental factor owed by Mr. Mara is no less than $150.00 per month which is approximately equal to the total sum of monies he paid in mortgage payments on the former family home during that period of time. Accordingly, we find that the community is owed an accounting for these rentals at the rate of $150.00 per month for one hundred sixteen (116) months or the total sum of $17,400.00, one-half (1/2) of which is to be credited to Mrs. Mara's share of the community.
Rents
Mr. Mara contends that the sum of $2,000.00 received in rent from the family home, after the termination of the putative marriage, was his separate property. We disagree.
The trial judge classified this rental income as a "community asset." Although the community terminated prior to the generation of these funds, we nonetheless find that these funds are not the separate property of Mr. Mara. The funds were generated from property which was community and as such was owned in indivision by Mr. and Mrs. Mara. See: Patin v. Patin, supra. Likewise, the rental funds are jointly owned by Mr. and Mrs. Mara. As such the rental funds should be divided equally between the parties. The effect of the trial court judgment accomplishes this end. However, the trial court erred in computing the amount of rents collected by Mr. Mara. Mr. Mara testified that he collected rent at the rate of $225.00 per month from June through December, 1984, which totals $1,575.00, and at the rate of $400.00 per month from April through July, 1985, which totals $1,600.00, or a total of rents collected in 1984 and 1985 of $3,175.00. We amend the judgment to reflect this amount.
Repairs and Maintenance
Defendant contends that the trial judge erred in awarding him $2,000.00 for the repairs of the family home instead of $7,000.00 which he allegedly spent on the repairs. He also argues that the classification of the $2,000.00 as a community debt results in an unjust enrichment to the plaintiff because according to Mrs. Mara she made no contributions following the termination of the putative community.
The trial judge has wide discretion to settle disputes of accounting between parties in a partition suit in order to effect a fair and equitable partition. La.R.S. *1225 9:2801. Queenan v. Queenan, 492 So.2d 902 (La.App., 3rd Cir., 1986).
The record reflects that the dates and amounts of the repairs were not established to the satisfaction of the court. The court correctly sustained the objection of the plaintiff to the introduction of physical evidence to support the defendant's claim for reimbursement for repairs, since that evidence had been sought in discovery and not produced prior to trial. See: Buxton v. Evans, 478 So.2d 736 (La.App., 3rd Cir., 1985) writ den. 479 So.2d 921 (La., 1985). Under these circumstances, we find no abuse of discretion in the ruling of the trial judge in assessing $2,000.00 as the cost of repairs and in determining that this was a community debt.
Savings Account
Defendant alleges that the trial court erred in finding that the savings account was valued at $2,000.00 and that these funds were community.
During trial the defendant was asked whether his "wife" had a savings account and he responded affirmatively. He further stated that the sum in the account at the time the parties separated in November 1974 was "around $2,000.00". The record establishes that the funds in the savings account were accumulated while the couple was living together. As such the funds would be presumed to be community and the one seeking to prove otherwise would bear the burden of that proof. Since defendant testified the account contained approximately $2,000.00 and it was his wife's account which existed while the couple lived together, we find no abuse of discretion by the trial court in finding the savings account contained $2,000.00 and that the sum involved was a community asset.
Judicial Interest
Plaintiff alleges that the trial court erred in not awarding her judicial interest on the community funds to which she is owed an accounting. She relies upon Fouchi v. Fouchi, 487 So.2d 496 at 500, (La.App. 5th Cir.1986) which provides:
All debts bear interest at the legal rate from the time they are due, La. C.C. art. 1938 (now part of La. C.C. art. 2000) and settlement of the community is due and payable on the date of the community's dissolution. Hodson v. Hodson, 292 So.2d 831 (La.App. 2nd Cir.1974).
We agree with plaintiff's position and accordingly will amend the judgment to award legal interest from the date of judgment of partition, that is, January 23, 1986.
For the reasons assigned the judgment of the district court is amended as follows:
IT IS ORDERED, ADJUDGED AND DECREED that the assets of the putative community formerly existing between Mrs. Mara (now Mrs. Gaudin) and Mr. Mara are as follows:
1) Mr. Mara's pension with Reilly, Inc. Coffee Company
2) The family home at 4968 Copernicus St.
3) Some of the contents of the family home
4) Mr. Mara's gun collection
5) A 1970 Volkswagon
6) A Plymouth Station Wagon
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the value of the community assets is as follows:

1) House $51,000.00
2) Gun Collection $2,500.00
3) Savings account (spent by Mr.
 Mara) $2,000.00
4) Rent received by Mr. Mara $3,175.00
5) Rent owed by Mr. Mara during
 his entire sole occupancy $17,400.00
 __________
 TOTAL $76,075.00

The community liabilities are as follows:

1) Mortgage on house $13,853.00
2) Mortgage payments made by Mr.
 Mara $20,400.00
3) Community debts paid by Mr.
 Mara $2,000.00
 __________
 TOTAL $36,253.00
 The net value of the community
 assets is $39,822.00

All of the community assets and liabilities are assigned to Mr. Mara. Mr. Mara is to pay to Mrs. Gaudin the sum of $19,911.00 to compensate her for her interest and she is discharged from any further liability for the community debts. Mr. Mara has possession of the house and gun collection since the separation and they shall be his separate property.

*1226 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Mrs. Gaudin is entitled to receive from Mr. Mara's pension, when and if paid, one half of the amount thereof earned during the existence of the community.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Mr. Mara pay to Mrs. Gaudin the value of two shares of Westinghouse stock, valued as of the date of the trial herein which was September 26, 1985.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Mrs. Gaudin and Mr. Mara are put in possession of their separate furniture.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the judgment in favor of Mrs. Mary Ann Gaudin and against Gustave Joseph Mara in the sum of $19,911.00 shall bear legal interest from January 23, 1986 until paid.
The judgment of the district court, as amended, is affirmed. The costs of this appeal are to be equally shared by the parties.
AMENDED AND AFFIRMED.