637 So.2d 1282 (1994)
Janice Kinchen, Wife of Randolph M. HOWES
v.
Randolph M. HOWES.
No. 93-CA-2366.
Court of Appeal of Louisiana, Fourth Circuit.
May 26, 1994.
*1283 Frank P. Tranchina, David B. Bernstein, Tranchina & Martinez, New Orleans, for defendant/appellant.
Curtis M. Baham, Jr., Baham and Anderson, Hammond, for plaintiff/appellant.
Before BYRNES, LOBRANO and ARMSTRONG, JJ.
*1284 LOBRANO, Judge.
Dr. Randolph Howes and his former wife, Janice Kinchen Howes, both appeal the June 16, 1993 trial court judgment partitioning the assets and liabilities of the community which formerly existed between them and ordering reimbursement to Dr. Howes for payments of certain community debts made by him with his separate funds. We affirm.
Janice and Randolph Howes were married in 1964. They moved to Maryland in 1971 and returned to Louisiana in 1977. Janice Howes filed a petition for divorce on October 26, 1978 and a judgment of divorce was subsequently granted.
In 1982, Randolph Howes instituted proceedings to partition the assets and liabilities of the former community. The most substantial community asset is the patent to a multiple-lumen catheter device known as the Howes Venous Catheter Device. In Howes v. Howes, 436 So.2d 689 (La.App. 4th Cir. 1983), writ denied, 441 So.2d 216 (La.1983), this court recognized Janice Howes' ownership of a one-half undivided interest in the patent of the catheter. During the subsequent course of the partition proceedings, Randolph Howes instituted bankruptcy proceedings. The records of the actions taken by the United States Bankruptcy Court in the case of Randolph Howes were reviewed and considered by the trial court in this partition action.
Both Janice and Randolph Howes appeal the trial court judgment alleging six and seven assignments of error respectively. In deciding this appeal, we considered Janice Howes' first assignment of error with Randolph Howes' first five assignments of error. These assignments all relate to Dr. Howes' claims for reimbursement of attorneys' fees paid by him which he asserts were related to the protection and maintenance of the patent on behalf of the community. According to Dr. Howes, these expenses should be shared by his former wife because they represent payment of legal services which inured to her benefit.

ATTORNEYS' FEES
In the judgment of partition, the trial judge ruled that Dr. Howes is entitled to reimbursement for attorneys' fees paid to the following law firm and attorneys:

 1) Finnegan, Henderson, Farabow $32,313.61
 and Garrett
 2) Joseph Slotnik 5,798.50
 3) David Bernstein 550.00

The trial judge denied Dr. Howes' claim for reimbursement of attorneys' fees paid to the following law firms:
1) Willian, Brinks, Olds, Hofer, Gilson and Lione
2) Pravel, Gambrell, Hewitt and Kimball
3) Fish and Richardson
4) Barham and Churchill
5) Bacon and Thomas
6) Finnegan, Henderson, Farabow and Garrett (denied fees totalling $14,242.25 from eight invoices listed in reasons for judgment)
Janice Howes argues that the trial court erred in awarding reimbursement for fees paid for the services of Richard Smith of the Finnegan, Henderson law firm. She alleges that these fees represented 1) efforts to defeat her claim for a one-half interest in the patent, 2) assistance with disputes between Dr. Howes and Arrow International, Inc. (the licensee with exclusive rights to manufacture and market the catheter), and 3) unnecessary duplication of legal services performed by the Fish and Neave law firm. Dr. Howes argues that the trial judge erred in denying his claim for reimbursement for the other attorneys' fees listed, because, according to Dr. Howes, those fees represented services related to the protection and maintenance of the catheter patent. The attorneys' fees that Dr. Howes claims he should have been awarded are those for the services of Joseph Slotnik (Willian, Brinks law firm), Richard Smith (Finnegan, Hendersonfees of $14,242.25 which were excluded in the reasons for judgment), Joseph Slotnik (Finnegan, Henderson law firm), Pravel, Gambrell, Hewitt and Kimball law firm, Fish and Richardson law firm and Dave Doeghtery (Bacon and Thomas law firm).
In her reasons for judgment, the trial judge concluded that services performed by Richard Smith for which reimbursement was awarded included assistance with the reissue *1285 application for the patent and several other catheter-related matters. The evidence established that Mr. Smith was successful in securing the reissue application after problems arose which caused the licensee (Arrow) to withhold royalties pending resolution of the matter. Because the Howes' relationship with Arrow was sometimes adversarial (as during the time when royalties were withheld), Smith's services were not duplicative of services performed by Fish and Neave when that firm represented Arrow in a patent infringement lawsuit.[1] Smith also negotiated with Arrow over various addenda to the licensing agreement and acted as a consultant to Fish and Neave in a patent infringement action concerning the catheter. Smith also consulted with Mrs. Howes' attorney regarding the patent proceedings and license.
For these services, Dr. Howes paid fees to Mr. Smith's firm of Finnegan, Henderson totalling $64,627.22. The trial judge ordered that Mrs. Howes reimburse Dr. Howes for half of that amount, or $32,313.61. The evidence satisfies us that these fees represented services regarding protection and maintenance of the patent which inured to the benefit of Mrs. Howes. We conclude that the trial judge correctly held that Dr. Howes is owed reimbursement by Mrs. Howes for that amount. As a co-owner of the catheter patent, Mrs. Howes is liable for her share of attorneys' fees related to the preservation and maintenance of the patent as well as those related to the infringement action.
We find no merit in Mrs. Howes' argument that the reimbursable fees of Richard Smith should be limited to those listed in an affidavit filed in a patent infringement case in federal court. In his deposition, Mr. Smith explained that the fees listed in the affidavit only represented a portion of fees related to infringement of the patent. He stated that the affidavit included fees related to the prosecution of the infringement litigation but did not include fees for matters indirectly related to infringement of the patent such as licensing negotiations with Arrow. Because these services also inured to Mrs. Howes' benefit, her liability for Mr. Smith's fees is not limited to those listed in the affidavit filed in federal court.
However, the trial judge disallowed Dr. Howes' claim for reimbursement of other invoices by Richard Smith of the Finnegan, Henderson firm totalling $14,242.25. The court found that these invoices represented services regarding Dr. Howes' community property dispute and a declaratory judgment action filed by Dr. Howes against Mrs. Howes' attorney. In his deposition, Smith confirmed that the fees reflected conferences with and review of documents drafted by attorneys representing Dr. Howes in his community property dispute and the declaratory judgment action against Mrs. Howes' attorney. However, he also claimed that these conferences only involved advice by him as to how to litigate these actions without negatively affecting the patent or the infringement litigation. Although it can be argued that these services could be interpreted either as related to Dr. Howes' domestic litigation or as strictly patent-related, we find no error in the discretion of the trial judge to characterize them as benefiting only Dr. Howes. We find no error in the denial of this claim.
Dr. Howes claims error in the denial of his claim for reimbursement of attorney's fees paid to the Willian, Brinks firm for the services of Joseph Slotnik. The Willian, Brinks invoices allegedly represent catheter-related work performed by Joseph Slotnik beginning in April 1984 when he joined that law firm.[2] However, Mr. Slotnik testified by deposition that his representation of Dr. Howes in his catheter-related litigation ended in 1984 because *1286 of a conflict of interest. Although Slotnik stated that he handled some peripheral matters with respect to the patent after April 1984, he stated that he was not representing Dr. Howes after that time but was consulted by Arrow regarding patent matters. After reviewing Mr. Slotnik's deposition, we conclude that Dr. Howes' claim for reimbursement for payment of the Willian, Brinks invoices was correctly denied by the trial judge.
Dr. Howes also argues that the trial judge erred in failing to award him reimbursement for attorney's fees paid for the services of Joseph Slotnik during his tenure at the Finnegan, Henderson firm. Although the trial judge does not mention this particular claim in the judgment, Dr. Howes admits that he offered no cancelled checks to correspond with invoices from Finnegan, Henderson covering the time period that Slotnik worked at that firm. Apparently the trial judge concluded that Dr. Howes failed in his burden of proving that those fees were paid or that they benefited the community. We find no manifest error in either conclusion.
The trial judge granted Dr. Howes' claim for reimbursement for attorney's fees paid for the services of Joseph Slotnik when he was a sole practitioner. Dr. Howes agreed at trial that the fees he paid to Slotnik on catheter-related matters totalled $14,043.94.[3] The trial judge noted that Mrs. Howes had already paid Slotnik $2,446.94. After crediting Mrs. Howes for the amounts already paid, the trial judge determined that Dr. Howes was entitled to reimbursement in the amount of $5,798.50. Mrs. Howes argues that this was a mathematical error. We conclude that it was not.
The amount of $14,043.94 paid to Mr. Slotnik by Dr. Howes plus the amount of $2,446.94 paid by Mrs. Howes totals $16,490.88. Therefore, each party's share of Mr. Slotnik's fees was $8,245.44. Dr. Howes' share of $8,245.44 is subtracted from the amount paid by him of $14,043.94 to arrive at the amount for which he is owed reimbursement. That figure is $5,798.50 as correctly calculated by the trial judge.
Dr. Howes' claim for reimbursement of the fees paid to the firms of Pravel, Gambrell, Hewitt and Kimball and Fish and Richardson was denied by the trial judge because Dr. Howes did not carry his burden of proving that these fees were associated with the preservation of the catheter patent or that the work of these firms was not a duplication of efforts of other law firms. The record supports this conclusion and we find no manifest error with the denial of these claims.
Dr. Howes' claim for reimbursement of fees paid to the law firm of Bacon and Thomas was denied by the trial judge because Dr. Howes did not prove that work performed by this firm inured to the benefit of Mrs. Howes. The evidence supports that conclusion as well as Mrs. Howes' contention that the services performed by Bacon and Thomas were unnecessarily duplicative of work performed by Richard Smith of the Finnegan, Henderson law firm. We find no manifest error in the denial of this claim.

JANICE HOWES' ASSIGNMENT OF ERROR # 2
Mrs. Howes argues that the trial court erred in not awarding her one-half of the rent collected by Dr. Howes on three parcels of commercial property which belonged to the former community. These properties were rented prior to the institution of Dr. Howes' bankruptcy proceeding but were sold within that proceeding. Mrs. Howes claims that she is entitled to one-half of the rent received from those properties from the date that the petition for divorce was filed, October 26, 1978, until the date that the properties were sold through the bankruptcy court in mid-1980.
The trial judge denied Mrs. Howes' claim for reimbursement of those rents stating that "this issue should have been raised during the bankruptcy proceeding if either party felt that they were due relief." Dr. Howes noted that neither party listed these rentals on the *1287 sworn descriptive lists of assets and liabilities filed prior to trial. (Mrs. Howes included these assets in an amended descriptive list filed after trial in this matter.) Dr. Howes testified that he did not know whether or not the rental income on the commercial property was used to satisfy community debts. In any event, Mrs. Howes did not establish that this rental income benefited Dr. Howes individually nor did she assert a claim for these funds before they were disbursed in the bankruptcy proceeding. This claim was correctly denied.

JANICE HOWES' ASSIGNMENT OF ERROR # 3
Mrs. Howes argues that the trial court erred in not allowing her to offset any accountings owed to Dr. Howes by her share of the rental value of the family home for the period that Dr. Howes occupied the home after the divorce petition was filed in 1978 until he moved out in 1983. The trial court did allow Mrs. Howes' claim for reimbursement of one-half of the rental value of the property for the two years that Dr. Howes allowed his associate, Dr. Patel, to live in the house rent-free.
The trial judge did not give any reason for denying Mrs. Howes' claim for the rental value of the house for the time it was occupied by Dr. Howes. However, in another case involving a factually similar situation, this court held that the trial court has discretion to charge the spouse who occupies the home the fair market rental value of the domicile owned by the former community. Starr v. Starr, 557 So.2d 1026 (La.App. 4th Cir.1990); Landwehr v. Landwehr, 547 So.2d 752 (La.App. 4th Cir.1989). Because an award for this type of claim is discretionary, it is also within the trial judge's discretion to deny such a claim. Furthermore, Louisiana Revised Statute 9:374 (formerly R.S. 9:308) specifically provides that the decision to award rent to a nonoccupant spouse rests solely within the discretion of the trial judge. Janice Howes' argument that she is entitled to it is unsupported in the record and we see no reason to overturn the trial judge's decision to deny this claim.

JANICE HOWES' ASSIGNMENT OF ERROR # 4
Mrs. Howes claims that the trial court erred in not awarding her one-half of the accounts receivable from Dr. Howes' medical practice which she claims are community assets. The trial judge denied this claim reasoning that Mrs. Howes did not carry her burden of proving that Dr. Howes actually collected the amounts owed on those accounts. The record supports this finding. Furthermore, Dr. Howes testified that he did not know whether or not the accounts receivable which were outstanding at the time of the filing of the bankruptcy proceeding represented services rendered during the community regime. Mrs. Howes did not offer any evidence to show that these accounts receivable were community property. Accordingly, we find no error in the denial of this claim.

JANICE HOWES' ASSIGNMENT OF ERROR # 5
In this assignment of error, Mrs. Howes argues that the trial court erred in not allowing her one-half of the equity in the community immovable property which was sold during the bankruptcy proceeding. Mrs. Howes argues that she should have been awarded one-half of the proceeds remaining after three pieces of commercial property were sold and after the debts secured by these properties were extinguished.
The trial judge denied this claim finding that after the properties were sold and creditors' claims were satisfied in Dr. Howes' bankruptcy proceeding, no amounts remained from which to award Mrs. Howes her share of the equity in these properties. Mrs. Howes argues that a substantial amount of the obligations satisfied during the bankruptcy proceeding were obligations which were incurred by Dr. Howes after the petition for divorce was filed. She claims that her equity in these properties should not have been used to satisfy separate obligations of Dr. Howes.
Initially, we note that Mrs. Howes made no claim in bankruptcy court for her share of these assets. She should have done so if she felt that her portion of the funds should not *1288 have been used to satisfy the claims of creditors. Additionally, the record shows that Mrs. Howes did not establish that the proceeds from the sale of these properties were used to pay off Dr. Howes' separate obligations rather than community obligations. Because the proceeds of the sale of the commercial properties totalled $163,000.00 and community debts were so substantial that it was necessary for Dr. Howes to use separate funds outside of bankruptcy to satisfy $123,986.66 in community debts, as determined by the trial judge, we find that the evidence preponderates in favor of the conclusion that the proceeds from the sale of the properties were used to satisfy community debts paid within the bankruptcy proceeding. With no evidence to the contrary and no amounts remaining after the debts were paid, the trial court correctly denied Mrs. Howes' claim for reimbursement of her share of the remaining equity in these properties.

JANICE HOWES' ASSIGNMENT OF ERROR # 6
Mrs. Howes argues that the trial court erred in failing to allocate the family home on Sevres Street to Dr. Howes in accordance with R.S. 9:2801. In the judgment of partition, the trial judge ordered that both Dr. and Mrs. Howes be recognized as each owning an undivided one-half interest in the family home located at 13133 Sevres Street in New Orleans and that the property be sold at private sale. The parties stipulated that the appraised value of the house was $75,500.00. The judge specified that the proceeds shall be divided equally between the parties.
Both parties admit that they could not reach an agreement on the sale or allocation of this property. Mrs. Howes argues that the house should have been allocated to Dr. Howes in the partition judgment because he (or his associate) lived in the house after the divorce, had managing control of the house and collected insurance claims for repairs to the house. The trial judge found that since the termination of the community regime in 1978, Dr. Howes has made all of the mortgage payments on the Sevres Street property as well as payments for repairs, property taxes and insurance. Based on this fact, Mrs. Howes was ordered to reimburse Dr. Howes for one-half of the amount expended by him for these items.
Dr. Howes argues that he should not be penalized for maintaining this property by having property allocated to him which has brought purchase offers substantially less than the $75,500.00 appraised value. We agree. The fact that Dr. Howes assumed all costs for maintaining the family home should not have any bearing whatsoever on the allocation of the property in this partition action.
R.S. 9:2801(4)(c) provides that, in allocating community assets and liabilities, the trial judge may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. Clearly, it was within the trial judge's discretion to allocate a one-half interest in the home to each party and to order that the property be sold at private sale. Furthermore, this was the most equitable way to allocate this asset in view of the fact that neither party wanted it in its entirety.

RANDOLPH HOWES' ASSIGNMENT OF ERROR # 6
Dr. Howes argues that the trial court erred in denying his claim for reimbursement of expenses for photocopies, postage, travel and telephone calls allegedly related to the preservation and maintenance of the catheter patent. Although the trial judge did not give reasons for the denial of this claim, it is reasonable to assume that Dr. Howes' self-serving testimony and notations on the invoices for these items did not sufficiently prove that these expenses were related to the catheter patent. Dr. Howes' accountant, who testified as to which expenses were related to the catheter patent, based his testimony on Dr. Howes' notations on his records. Dr. Howes also testified that he was not sure whether or not he was reimbursed for some of his travel expenses. Based on this we cannot say that the trial court abused its discretion in denying Dr. Howes' claim for reimbursement for these expenses. This assignment of error is without merit.

*1289 RANDOLPH HOWES' ASSIGNMENT OF ERROR # 7

In this final assignment of error, Dr. Howes argues that the trial court erred in awarding legal interest from the date of the signing of the judgment of partition rather than from the date of judicial demand or the date of the trial of the partition action or the date of the termination of the community regime. Although other Louisiana Courts of Appeal are split on the issue of when legal interest begins to run in suits for accounting and settlement of a community[4], this court has awarded legal interest in this type of case from the date of the judgment of partition. Mara v. Mara, 513 So.2d 1220 (La. App. 4th Cir.1987), writ denied, 517 So.2d 813 (La.1988).
Dr. Howes argues that the Mara case is distinguishable from the instant case. He contends that Mara involved a judgment for an equalizing payment to a spouse after the division of community assets and liabilities, whereas this case involves one spouse (Dr. Howes) seeking compensation from his former spouse for separate property which was used for the benefit of community property.
We disagree. Dr. Howes' distinction is one that makes no difference. Both Mara and this case involve actions for the partition of community assets and liabilities. In Mara, as in the present case, the court divided community assets and liabilities between the parties and offset the total amount allocated to each party with credits for community debts paid prior to the judgment of partition and for payments owed by one spouse to another. Because of the similarity of the Mara case to the instant case, we follow that decision and award interest only from the date of the judgment of partition.
Furthermore, although the distribution of community assets and liabilities with adjustments for credits owed to each party results in a net award to Dr. Howes in this case, we note that the lengthy delay between the filing of the petition for partition on March 22, 1982 and the rendering of the judgment of partition on June 16, 1993 was caused at least, in part, by Dr. Howes' protracted efforts to deny Mrs. Howes her right to a one-half ownership of the catheter patent. Because some of these efforts were found by this court in Howes v. Howes, 436 So.2d 689 (La.App. 4th Cir.1983), writ denied, 441 So.2d 216 (La.1983), to constitute fraud, Dr. Howes should not benefit from those efforts by being awarded pre-judgment interest.[5]
Accordingly, relying on Mara v. Mara, supra, we find that the trial judge correctly ruled that legal interest on this judgment shall run from June 16, 1993, the date that the judgment of partition was rendered.
*1290 For the reasons stated above, the trial court judgment is affirmed.
AFFIRMED.
NOTES
[1] Both Dr. Howes and Janice Howes, as well as their licensee, Arrow, instituted patent infringement proceedings. All were represented by Fish and Neave. However, because of adversarial positions taken on other matters by Arrow and the Howes, Richard Smith was retained to represent Dr. Howes.
[2] Joseph Slotnik worked at the Finnegan, Henderson law firm from January 1976 to August 1982. He was a sole practitioner from August 1982 through March 1984. Slotnik joined the Willian, Brinks law firm in April 1984 and remained there until his death in 1985.
[3] Dr. Howes originally claimed more than that amount. However, during his testimony, he agreed to the lesser amount of $14,043.94.
[4] In some cases, courts have awarded legal interest for suits for accounting and settlement of a community from the date of judicial demand. Oliver v. Oliver, 561 So.2d 908 (La.App. 2nd Cir.1990); Webber v. Berry, 609 So.2d 1175 (La. App. 2nd Cir.1992). Others have ruled that legal interest runs from the date of trial on the partition action. Allen v. Allen, 602 So.2d 759 (La. App. 3rd Cir.1992); Queenan v. Queenan, 492 So.2d 902 (La.App. 3rd Cir.1986), writ denied, 496 So.2d 1045 (La.1986). Another Third Circuit case held that legal interest is due from the date of the judgment of partition. Barbin v. Barbin, 546 So.2d 609 (La.App. 3rd Cir. 1989). In a Fifth Circuit case, legal interest was awarded from the date that the community was terminated. Fouchi v. Fouchi, 547 So.2d 1140 (La. App. 5th Cir.1989), writ denied, 552 So.2d 385 (La.1989).
[5] On April 20, 1982, Mrs. Howes filed a rule to traverse alleging that Dr. Howes failed to list the patent in his descriptive list of community assets and liabilities. Dr. Howes argued that the patent was his separate property but this court found that the patent was a community asset and declared that Mrs. Howes was the owner of a one-half undivided interest in the patent. Howes v. Howes, 436 So.2d 689 (La.App. 4th Cir.1983), writ denied, 441 So.2d 216 (La.1983). Mrs. Howes then filed a new descriptive list which included the patent. Dr. Howes filed a motion to traverse arguing again that the patent and related property interests were his separate property. Mrs. Howes filed an exception of res judicata which was maintained by the trial court. This court affirmed. Howes v. Howes, 518 So.2d 1147 (La.App. 4th Cir.1987), writ denied, 523 So.2d 232 (La.1988).

Additionally, Mrs. Howes attaches to her brief two complaints filed by Dr. Howes in federal court in 1984 and 1988 wherein he sought to be declared the sole owner of all property rights in the reissue patent. One of the complaints was filed in anticipation of the reissue patent and the other was filed after the reissue patent was issued in 1985.